**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FLORISTEAN McMILLAN,

                                                     CASE NO. 16-12886
               *Plaintiff*,               DISTRICT NANCY G. EDMUNDS
*v.*                                      MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**
**MOTIONS FOR SUMMARY JUDGMENT (Docs. 15, 18)**

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 15) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 18) be **GRANTED,** and that the administrative decision be affirmed**.**

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq*. (Doc. 4; Tr. 1-4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18).

Plaintiff Floristean McMillan was sixty years old as of March 23, 2015, the date of the ALJ's decision. (Tr. 28, 147). The Commissioner denied her claim on October 30, 2013. (Tr. 63). McMillan then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on February 18, 2015, before ALJ Martha Gasparovich. (Tr. 33-62). McMillan testified at the hearing with the assistance of her attorney, Ms. Susser; Vocational Expert ("VE") Kenneth Brody also testified. (*Id*.). On March 23, 2015, the ALJ found McMillan not disabled. (Tr. 12-21). On June 7, 2016, the Appeals Council denied review. (Tr. 1-4). McMillan filed for judicial review of that final decision on August 6, 2016. (Doc. 1).

### B.   Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

2

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

**D.     ALJ Findings**

Following the five-step sequential analysis, the ALJ found McMillan not disabled under the Act. (Tr. 28). The ALJ found at Step One that McMillan had not engaged in substantial gainful activity following the alleged onset date, February 1, 2013. (Tr. 18). At Step Two, the ALJ concluded that McMillan had the following severe impairments: "[d]egenerative disc disease; L5-S1 radiculopathy; hypertension; migraines; shingles; and sciatica." (*Id*.). At Step Three, the ALJ found that McMillan's combination of impairments did not meet or equal one of the listed impairments. (*Id*.). The ALJ then found that McMillan had the residual functional capacity ("RFC") to perform work at the light level of exertion, with additional limitations as follows:

> [S]he can stand and walk at least four hours of eight-hour day. Sitting would be unlimited but there would be a need for a sit/stand at will option at least every 30 to 45 minutes. Lifting would be limited to 20 pounds occasionally and 10 pounds frequently. The individual would be able to push or pull with any of the extremities. She could only squat, crawl, kneel, climb, balance, bend, or stoop occasionally.

(Tr. 19-26). At Step Four, the ALJ found that McMillan could perform her past relevant work as a receptionist. (Tr. 26). The ALJ thus did not proceed to Step Five.

**E.     Administrative Record**

**1.     Medical Evidence**

The Court has thoroughly reviewed McMillan's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

## 2.  Application Reports and Administrative Hearing

### a.  McMillan's Function Report

McMillan completed a function report on September 4, 2013. (Tr. 164-76). She asserted that she suffers from "headach [sic] severe at times lasting 3 days when they do occur." She complained of medication-induced drowsiness which interfered with her ability to focus. (Tr. 164). Back pain and leg numbness cause trouble sitting and standing. (*Id.*). Blood pressure interfered with her ability to sleep. (*Id.*).

McMillan attended therapy three days per week for back pain. (Tr. 165). She spent her days performing personal care, reading, and performing home exercises for treatment of back pain. (*Id.*). She complained of waking during the night due to back pain and headaches. (*Id.*). She had difficulty getting into and out of the tub, but could otherwise perform personal care activities without restriction. (*Id.*).

McMillan prepared meals, including breakfast and sandwiches on a daily basis; this task took twenty minutes to two hours. (Tr. 166). She could not "stand long," and wrote that she went "from standing to sitting often." (*Id.*). She performed chores like washing dishes, dusting, ironing, and folding clothes. (*Id.*). She did not perform yard work. (Tr. 167). She went outside of the home daily to visit her mailbox, and several times weekly for physical therapy. (*Id.*). She could not drive, but could go out alone. (*Id.*). She shopped for things by computer, and indicated that she did not shop in stores. (*Id.*). She had no trouble handling money. (*Id.*).

6

Her hobbies included reading, attending family gatherings, attending church, and spending time with her children. (Tr. 168). She no longer walked or bowled due to her condition. (*Id.*). McMillan asserted that she engaged in "[n]o walking (painful) except therapy." (*Id.*). She socialized with others daily, read, and attended Bible study classes. (*Id.*). She had "<u>no</u> problem with others." (Tr. 169).

McMillan complained of problems performing all exertional and postural tasks, along with trouble remembering and concentrating. (Tr. 169). She had no problems understanding, following instructions, using her hands, or getting along with others. (*Id.*). She could not lift weights over three pounds. (*Id.*). She could walk about half a mile, and could resume walking following a thirty to sixty minute rest. (*Id.*). She could pay attention for one hour. (*Id.*). She did not finish what she started, but had no difficulty following instruction. (*Id.*). She did not use a walking aid. (Tr. 170). Use of medication caused dizziness, drowsiness, and impaired her ability to drive. (Tr. 171).

### b.     McMillan's Testimony at the Administrative Hearing

At the February 18, 2015, hearing before the ALJ, McMillan testified that use of medication interfered with her ability to concentrate. (Tr. 40). She suffered from migraines three or four times per month, and they lasted three to four days each. (*Id.*). During migraines she suffered was unable to concentrate, was dizzy, and could not focus. (*Id.*). Use of medication ameliorated her migraines, but left her unable to focus. (*Id.*). During migraines, she would lie down in a dark and quiet room. (Tr. 49). Even when migraines

lasted multiple days she would spend those days in her room "that whole time period," exiting the bedroom only to use the bathroom. (Tr. 50).

McMillan testified to suffering from a car accident in November 2013 which caused a back injury and headaches. (Tr. 42). Just shortly prior to the hearing she suffered a fall on black ice. (Tr. 43).

McMillan could stand for fifteen to twenty minutes at a time before she felt "weak," particularly in the lower back, and was forced to sit down. (Tr. 45). She could sit for twenty to thirty minutes before her "back tightens up" and she must "move about a lot, quite a bit." (*Id.*). She could walk perhaps half a city block. (*Id.*). As of the hearing she used a crutch due to spraining her ankle in her recent fall. (Tr. 46). Prior to the fall, she did not require use of a walking aid. (*Id.*). She could lift only about five pounds, at which point her "hands start shaking," and she drops the object. (*Id.*). She read as a hobby. (Tr. 47).

McMillan's average day consisted of bathing, eating, watching television, making lunch with the assistance of her granddaughter, and napping. (Tr. 47). She drove "about twice a week." (*Id.*). She no longer bowled. (*Id.*). She enjoyed spending time with family. (*Id.*). McMillan slept about four hours nightly. (Tr. 48). She napped during the day for an unspecified length of time. (*Id.*). She got along well with others. (*Id.*).

McMillan also asserted that her pain level was an eight "and above" out of ten, with ten representing the need for emergency care. (Tr. 50-51). She explained that the pain manifested as a stabbing, tingling pain, with some numbness. (Tr. 51). The pain radiated into her legs, primarily the right leg. (*Id.*). Since the car accident McMillan used a brace,

8

which she wrote to the hearing. (Tr. 51-52). To alleviate pain, she lied down and elevated her feet above waist level; she did so twice daily for two hours per session. (Tr. 52). She was compliant in taking eleven prescribed medications, which caused difficulty concentrating. (Tr. 52-53). These medications impeded her ability to read, such that she no longer "retain[ed] as much as [she] used to." (Tr. 53). She found it impossible to "watch movies anymore" because she no longer retained what she watched. (*Id*.).

McMillan's blood pressure climbed to unsafe levels an average of four times per week. (Tr. 54). During these episodes she felt dizzy and had difficulty focusing. (*Id*.). She could focus on a "simplistic task" for only fifteen or twenty minutes, "[o]r shorter, maybe." (*Id*.). McMillan had difficulty getting up from a sitting position, was unable to stoop, and experienced pain when bending. (Tr. 55).

### c.   The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine McMillan's ability to perform work. (Tr. 55). McMillan testified that she previously worked as a receptionist, where she spent her time mostly sitting. (Tr. 56-57). She was required to lift mail bins which weighed perhaps ten pounds. (Tr. 57). The VE described work as a receptionist as semi-skilled and sedentary. (Tr. 58).

The ALJ asked the VE to assume a hypothetical person of McMillan's age, education, and work experience, who could stand and walk for "as least four of eight hours," who could sit without limitation, but who would have "a need for a sit/stand option at least every 30 to 45 minutes," who had the ability to lift twenty pounds occasionally and

ten pounds frequently, who was unable to push or pull at all, and who could only squat, crawl, kneel, climb, balance, or stoop occasionally. (Tr. 58). The VE found that such a worker could perform McMillan's past work as a receptionist. (*Id*.).

The VE further concluded that even if the limitations were modified to permit "walking no more than two hours in an eight hour day and . . . lift[ing] no more than 10 pounds," the hypothetical worker could still handle that modified position. (Tr. 58-59).

The ALJ then asked whether an individual further limited to reaching "no more than minimally," *i.e.* no more than ten percent of the workday, could perform McMillan's past work. (Tr. 59). After clarifying that the restriction was additional to the second hypothetical, the VE found that no jobs would exist. (Tr. 59-60).

The VE also testified that an individual who took breaks once daily for thirty to forty-five minutes would be unable to perform competitive work. (Tr. 60). Likewise, a worker who left work three to four times per month would be unemployable. (Tr. 60-61).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an

10

impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic

11

techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Caldwell v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

12

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Caldwell v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a

13

claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

  (i)   [D]aily activities;
  (ii)  The location, duration, frequency, and intensity of . . . pain;
  (iii) Precipitating and aggravating factors;
  (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
  (v)   Treatment, other than medication, . . . received for relief of . . . pain;
  (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

14

A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

McMillan argues that the ALJ erred in numerous ways. Her arguments are addressed below.

### i.    The limited range of light work findings

McMillan first argues that the ALJ erred by purporting to limit her to light work, yet establishing additional limitations which restrict her to a less than full range of light work. (Doc. 15 at 12). She further asserts that "it is impossible for Plaintiff or any employee to perform a full range of light work while being limited to standing/walking for only 4 hours of an 8 hour workday." (*Id*.).

McMillan misapprehends the nature of the ALJ's decision. It is indeed impossible for a claimant to perform a "full range" of light work where the RFC provides additional restrictions limiting them to a less than full range of light work. Yet this fact is irrelevant. The ALJ did not purport to restrict McMillan to a "full range" of light work, and clearly restricted her to light work as modified by further functional restrictions. This was not error.

In the same vein, McMillan asserts that the ALJ erred by including a sit-stand option, because "an option to sit or stand for any amount of time while performing light

15

work does not fall in line with SSR 83-12 or 20 C.F.R. § 404.1567." (*Id.*). There is nothing impermissible about including a sit-stand option in conjunction with a restriction to light work. *See Morin v. Comm'r of Soc. Sec.*, No. 1:16-CV-202, 2016 WL 7473311, at *5 (W.D. Mich. Dec. 29, 2016) ("The Court discerns no inconsistency in the ALJ's determination that Plaintiff can perform a limited range of light work with the aforementioned sit-stand option"); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) (concluding that there is no inherent inconsistency between a sit-stand option and a RFC of sedentary work). McMillan again asserts that this represents less than a "full or wide range of light work" (*Id.* at 13) but because the ALJ did not purport to limit her to a full or wide range of light work, it is irrelevant.

McMillan later asserts that the restriction in the hypothetical question and RFC finding that she would be "unable to push or pull with any of the extremities" does not comport with the statutory definition of light work. (Doc. 15 at 14). Once again, the ALJ did not purport to find that McMillan could perform the full range of light work, but rather found that she could perform light work as constrained by numerous other limitations. This was perfectly permissible.

### ii.    McMillan Waived Any Argument Relating to SSR 96-8p

McMillan also asserts, very briefly, that the ALJ violated the "narrative discussion requirement" imposed by SSR 96-8p, which requires that the ALJ consider the claimant's ability to work on a continuing and regular basis. (Doc. 15 at 16). She does not describe just how the ALJ violated this requirement, asserting only that the ALJ did not sufficiently

comply with her duty to develop the facts for and against benefits. (*Id.*). "It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Rice v. Comm'r of Soc. Sec.*, 169 Fed. Appx. 452, 454 (6th Cir. 2006) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)). McMillan's failure to develop her argument in a more than "skeletal way," leaving it for the Court to "put flesh on its bones," merits waiver. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### iii.    The ALJ's RFC Finding Was Not Fatally Unclear

McMillan next argues that the ALJ erred by vaguely defining the sit-stand option included in the RFC finding. (Doc. 15 at 13). In her decision, the ALJ provided that "[s]itting would be unlimited but there would be a need for a sit/stand at will option at least every 30 to 45 minutes." (Tr. 19). McMillan argues that this is "simply confusing and does not make much sense," because the language is subject to multiple interpretations. (Doc. 15 at 13).

While McMillan is correct that the ALJ's choice of words was imperfect, it is not error meriting remand. Magistrate Judge Majzoub addressed a very similar circumstance in *Richards v. Comm'r of Soc. Sec.*, No. CV 16-10905, 2017 WL 892345, at *7 (E.D. Mich. Feb. 16, 2017), report and recommendation adopted, No. 16-CV-10905-DT, 2017 WL 878025 (E.D. Mich. Mar. 6, 2017). In that case, the ALJ included a restriction of "sit/stand, at-will, option every 30 minutes." *Richards*, No. CV 16-10905, 2017 WL 892345, at *7.

17

The magistrate judge interpreted that this limitation provided the claimant with "a break every 30 minutes, either from standing or sitting, if she chooses." *Id*. She further found that "the ALJ clearly did not intend to find that Plaintiff requires a true 'at will' sit/stand option; otherwise, he would not have included the 'every thirty minutes' qualification.'" *Id*. She therefore concluded that the ALJ plainly did not intend "at will" to mean that the worker could constantly transition from sitting to standing, but rather that the worker could choose to sit or stand every thirty minutes if she found it necessary. *Id*.

In this case, rather than asserting that the ALJ's restriction could be interpreted as an "at will" restriction, she simply argues that the ALJ was fatally unclear with regard to how often she may change position. (Doc. 15 at 13). Her argument on this point is unpersuasive. She asserts that

> [t]his limitation can be interrupted in a couple different ways. Would Plaintiff have the option to sit for 30-45 minutes and then for the next 30-45 minutes either sit or stand as much as she prefers? Or does this limitation mean that she is only able to shift from sitting to standing once every 30-45 minutes? Or does it mean that Plaintiff may shift between sitting and standing for 30-45 minutes, then wait 30-45 minutes in either a sitting or standing position, then go back to switching between sitting and standing for the next 30-45 minutes?

(*Id*.). All but of one of these interpretations seem quite tortured. Nothing in the medical record supports a finding that McMillan would benefit from rapidly oscillating between sitting and standing like the piston of an engine. On the contrary, McMillan's own testimony supports a finding that she is able to stand for fifteen to twenty minutes before she needed to sit down, and could sit for twenty to thirty minutes before she needed to

18

"move about a lot." (Tr. 45). It is therefore most natural to interpret the words "at will" to mean "at McMillan's discretion" in this context. The ALJ should therefore be read to provide McMillan with "a sit/stand [at McMillan's discretion] option at least every 30 to 45 minutes." Neither the VE nor McMillan's attorney expressed any difficulty understanding the ALJ's restriction, suggesting that all present at the hearing interpreted the ALJ's wording in this most natural manner.

I further note that, even if the VE misunderstood the ALJ, remand would nevertheless be unnecessary on this issue. Each of McMillan's proposed interpretations of the ALJ's phrase is stricter and more limiting than the most natural interpretation. The VE found that a hypothetical worker, limited as provided for in the ALJ's hypothetical, would be able to perform McMillan's past relevant work as a receptionist. (Tr. 58). Thus, even if the VE incorrectly assumed that the ALJ intended to provide for an "at will" sit stand option, or that the worker could rise and sit constantly like a piston, the VE nevertheless concluded that such a worker could perform work as a receptionist. Any harm occasioned by this misunderstanding would therefore inure to McMillan's benefit.

McMillan also briefly asserts that "[i]t is difficult to imagine that any reasonable employer would suggest and monitor such a serious confusing limitation." (Doc. 15 at 13). McMillan has not identified any statute or regulation providing that an ALJ's hypothetical questions are valid only insofar as they are actually enforceable by an employer, and the undersigned is not aware of any such requirement. No cause for remand can be found here.

### iv.    The ALJ Provided Sufficient Reasons to Discount McMillan's Credibility

McMillan also argues that the ALJ erred by creating an RFC finding which did not account for the limitations to which she testified. (Doc. 15 at 14-15). She notes several medical findings from March 2013 through December 2014 wherein she was found to be limited in her ability to walk, sit, and stand. (*Id*.). She also notes that in February 2014 she was found to need "help with activities of daily living." (*Id*.; Tr. 310). The RFC provides that McMillan could stand and walk for half of the workday, and could sit for an unlimited amount of time with a sit-stand option every thirty to forty-five minutes, and McMillan asserts that these limitations clearly outstrip her actual ability to stand, walk, and sit. (Doc. 15 at 15).

With regard to subjective complaints of back pain, in 2011 McMillan complained of persistent back pain (Tr. 20); in 2012 she was discharged from physical therapy for failure to complete the program (*Id*.); in late 2012 McMillan admitted to "doing rather well" (*Id*.); in 2013 she had seven out of ten back discomfort along with difficulty standing for extended periods and tenderness in the low back (Tr. 21); also in 2013 McMillan complained of eight out of ten back pain, which worsened with sitting or standing for more than thirty minutes (*Id*.); in late 2013 McMillan continued to complain of chronic back pain, but was "getting along relatively well" (Tr. 23); in January 2014 she again complained of lower back pain following a car accident (*Id*.); later in 2014 McMillan complained of back pain, but noted that it was ameliorated by medication (*Id*.); in April

20

2014 she expressed pain at a rate of six out of ten, which was a "number she thinks she can handle" (*Id*.); in June 2014 her back was tender in the lumbar area, particularly on flexion and extension (*Id*.); also in 2014 McMillan expressed improvement in her back pain, which improved her activities of daily living (Tr. 23-24); in September 2014 McMillan apparently failed to attend physical therapy and was discharged (Tr. 24); she complained of back pain in November 2014, but declined a pain relieving injection (*Id*.); in August 2014 she had reduced pain and increased ability to perform her activities of daily living (*Id*.).

As to subjective complaints of headache, the ALJ noted that McMillan complained of headaches three to four times monthly lasting several days each. (Tr. 20). The ALJ compared this to medical notes in 2012 wherein McMillan admitted to reduced headaches, and wherein she admitted that medication significantly helped to reduce and treat that condition. (*Id*.). In 2013 Dr. Hines noted complaints of monthly headaches. (Tr. 21). Also in 2013, Dr. Johnstone wrote that McMillan denied complaints other than those associated with her back pain, suggesting that headaches were not bothering her at that time. (*Id*.). The ALJ also noted that McMillan's blood pressure, which she alleged was directly correlated with her incidents of headaches, was generally controlled throughout the treatment record, and indeed was "awesome" in 2014. (Tr. 25). The ALJ also properly noted that while McMillan asserted that her ability to focus and remember was degraded (Tr. 40, 47, 53-54), attested to spending much of her free time reading, and attended Bible study classes (Tr. 168-69).

The ALJ also found that while McMillan attested to elevating her legs above waist level, the "record does not corroborate this statement." (Tr. 19). Indeed, McMillan herself appears to have abandoned these claims as she makes no argument that the ALJ erroneously excluded this limitation from the RFC finding. Dr. Hines wrote in March 2013 that McMillan elevated her legs occasionally during the workday. (Tr. 272). However, there is scant mention of this alleged pain relieving activity in 2014 or 2015. Given that the need to elevate her legs for several hours per day above the waist level would significantly interfere with McMillan's activities of daily living, the ALJ reasonably questioned whether this limitation was necessary in 2015 when McMillan attested to it. This provides some reason for doubting McMillan's testimony.

The ALJ further found that McMillan obtained benefit from physical therapy, but nevertheless unexpectedly ceased attending physical therapy on at least one occasion, suggesting that her pain was not as disabling as alleged. (Tr. 24, 26).

McMillan also complains that the ALJ should not have relied upon her conservative treatment and rejection of pain relieving injections as justification for finding that her complaints were less than credible. (Doc. 15 at 17). However, it is well established that modest treatment may be used to support an ALJ's credibility findings because modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

22

In addition, the ALJ was well justified in considering McMillan's refusal to accept pain relieving spinal injections. The record includes physician findings that pain relieving injections were medically appropriate, and such injections were offered to McMillan on several occasions. (Tr. 405, 409, 411, 432). McMillan responds that "[d]eclining injections does not negate suffering from severe pain. At no point does the ALJ question whether the Plaintiff discussed the possible severe side effects of injections with her treaters [sic]." (Doc. 15 at 18-19). McMillan's argument has some initial plausibility; where a medication comes with substantial side effects, an ALJ's unsupported conclusion that the claimant could and should have taken the medication comes close to playing doctor. Yet the strength of this argument depends upon the evidence in the record and the medication in question. For instance, in *Gholston v. Comm'r of Soc. Sec.*, No. 07-CV-14902, 2009 WL 440956, at *12 (E.D. Mich. Feb. 23, 2009) the Court remanded where the claimant and his physician noted the powerful side effects of the steroid Prednisone, the ALJ found that the claimant's credibility was undermined because he voluntarily chose not to take high doses of that medication, and the ALJ wholly failed to engage with the evidence in the record regarding the side effects of that medication.

There is no evidence in the record that pain relieving injections come with significant side effects, nor any evidence that McMillan responded poorly to that medication. Instead, we have several remarks by physicians that use of pain relieving injections was medically appropriate, and several notations that McMillan rejected that treatment. Nothing in the record explains or justifies McMillan's rejection of pain relieving

23

injections. Moreover, McMillan has wholly failed to marshal evidence from case law that these injections have severe and widely known side effects. McMillan instead relies upon pure speculation that the injections might have produced side effects which would outweigh the benefits of that therapy, even where her physicians thought the treatment was appropriate. Further, courts in this circuit have repeatedly concluded that pain relieving injections are conservative therapy. *See, e.g.*, *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *3 (E.D. Mich. Feb. 27, 2015); *Cookman v. Comm'r of Soc. Sec.*, No. 13-10687, 2013 WL 6631463, at *4 (E.D. Mich. Dec. 17, 2013); *Carmen v. Astrue*, No. 10–372, 2011 WL 4345731, at *3 (E.D. Ky. Sept. 15, 2011). Where McMillan alleged constant pain rating at least eight out of ten despite use of oral medication (Tr. 50-51), it is entirely reasonable to assume that she would have welcomed any treatment which might provide relief. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."). The ALJ merely relied upon the findings of McMillan's own physicians who recommended that she undergo this treatment.

In sum, the ALJ noted several inconsistencies which justified discounting McMillan's asserted degree of limitation. While McMillan assuredly suffers from maladies of the spine, her asserted degree of limitation is not consistent with the medical record as a

24

whole. As the ALJ aptly noted, McMillan expressed reduced pain over the course of the treatment record, inconsistent with her claims of unchanged or worsening pain.

### v.    McMillan's Lifting Limitations

McMillan next argues that the ALJ failed to account for her limited ability to lift weight. She cites notes from the medical record wherein it was found that she could lift only five pounds (Tr. 272), seven pounds (Tr. 390), and that lifting any weight exacerbated her back pain (Tr. 408). (Doc. 15 at 15). The ALJ found that McMillan could lift twenty pounds occasionally and ten pounds frequently. (Tr. 19). However, the ALJ's decision was based on the finding that Plaintiff could return to her past relevant work as a receptionist. Her past work was performed at the sedentary level and did not require her to lift more than 10 pounds. (Tr. at 58-59.) Accordingly, the ALJ did account for this limitation and any error in the ALJ's finding that Plaintiff could perform light work was rendered harmless by the ALJ's finding that she could return to her past work which required only the ability to perform sedentary work.

### vi.    Dr. Hines' Opinions

McMillan next asserts that the ALJ gave insufficient reasons for the weight accorded to Dr. Hines' opinions. (Doc. 15 at 17-20). McMillan first makes a brief argument that, "if the ALJ was truly concerned that Dr. Hines' opinions were based on anything other than Plaintiff's medical conditions, or even if the ALJ was concerned that the evidence did not support Dr. Hines' opinion for any other reason, she should have contacted Dr. Hines for further information." (Doc. 15 at 19). The ALJ may recontact a physician where

necessary to obtain additional evidence or clarify some matter. *See* 20 C.F.R. § 404.1520b(c), 416.920b(c). However, by no means is the ALJ obligated to recontact a physician merely because the ALJ believes that the physician rendered an unsupported opinion or demonstrated partiality to their patient.

In March 2013 Dr. Hines wrote that McMillan suffered from hypertension, migraines, and a herniated disc, and would consequently be able to stand or sit for only thirty minutes at a time, lift five pounds occasionally, could only occasionally bend or stoop, and would need to elevate her legs occasionally during the workday. (Tr. 272). In August 2013, Dr. Hines drafted a disability statement in which she asserted that McMillan was disabled because of bulges of the spinal discs at L3-L4 and L5-S1, along with a herniated disc at L4-L5. (Tr. 271). She noted that McMillan's conditions had not improved, and that she was unable to stand, sit, push, pull, kneel, or stoop without great difficulty. (*Id.*). In February 2014, Dr. Hines completed a private insurance disability form indicating that McMillan was unable to perform cleaning, laundry, dishes, yard work, making beds, grocery shopping, running errands, or taking out the trash. (Tr. 321). In July 2014 Dr. Hines provided another disability letter in which she indicated that McMillan's conditions were worsened by her recent car crash, that she was disabled by pain in the low back, and that therapy did not resolve her difficulties sitting, standing, pushing, pulling, kneeling, and stooping. (Tr. 403).

McMillan argues that the ALJ erred by discounting Dr. Hines opinions for being based on McMillan's subjective complaints, because "a doctor would be irresponsible to

26

totally ignore the subjective complaints of his/her patients, so it should be expected that Dr. Hines would take into account Plaintiff's complaints." (Doc. 15 at 17). This is true, but misrepresents the ALJ's decision. The ALJ did not discount Dr. Hines' opinions because they included McMillan's subjective complaints. Rather, the ALJ ostensibly did so because she found that McMillan's subjective complaints dominated Dr. Hines' opinions and that Dr. Hines' opinions did not cite any medical findings to support the opinions.

McMillan also complains that the ALJ did not sufficiently discuss the inconsistencies she perceived between Dr. Hines' opinions and the treatment records as a whole. (Doc. 15 at 17-18). It does not appear that Dr. Hines uncritically regurgitated all of McMillan's subjective complaints. Dr. Hines went so far as to confront McMillan regarding apparent inconsistencies between reports of pain made to Hines and reports made to other physicians. (Tr. 437). Further, Dr. Hines' take on McMillan's limitations are in some areas much less severe than McMillan's own testimony. For instance, while McMillan attested that she experienced three or four headaches monthly (Tr. 40), Dr. Hines recorded that she had only about one headache per month. (Tr. 274).

However, Dr. Hines' notes are heavy on recitation of subjective complaints and sparse on medical findings that could support those complaints. Dr. Hines' notes are voluminous, but are scribbled and hard to decipher. From what the undersigned can determine, McMillan sought treatment for eight out of ten back pain from various physicians as far back as January 2011. (Tr. 230). An MRI performed in that month showed disc protrusions at L2-3, L3-4, and L4-5, along with multilevel spondylosis. (Tr. 236-37).

27

In March 2013 Dr. Hines noted a positive straight leg test and tenderness in the lower back. (Tr. 277). Dr. Hines distinguished between bulging discs at L3-L4 and L5-S1, and herniated discs at L4-L5. (*Id*.). In June 2013 Dr. Hines noted herniated discs, and ordered additional MRI scans to determine the severity of the damage. (Tr. 255). In August 2013 Dr. Hines found that McMillan would be unable to work because she could not sit or stand for lengthy periods, and could not push, pull, kneel, or stoop as the result of her herniated discs. (Tr. 271-73). McMillan suffered from apparent hip pain following a car accident in 2013, yet in 2014 Dr. Higginbotham found that the pain was more likely "from lumbosacral origins," and was "likely from the L4-L5 level rather than from her hip joint[.]" (Tr. 305). In February 2014 Dr. Hines completed a private insurance disability form indicating that McMillan was unable to perform cleaning, laundry, dishes, yard work, making beds, grocery shopping, running errands, or taking out the trash. (Tr. 321). In May 2014 another MRI demonstrated a broad based disc bulge with some thickening of the ligamentum flavum, mild narrowing of the central spinal canal, bilateral facet arthropathy, and mild narrowing of bilateral neural foramina at the L3-L5 levels. (Tr. 395). It also showed a disc bulge at the L5-S1 level. (*Id*.). In July 2014 Dr. Hines recorded that McMillan's back condition had improved somewhat with therapy, but that she was still unable to sit or stand for a significant period of time, and had difficulty pushing, pulling, kneeling, and stooping. (Tr. 403). In January 2015 McMillan again complained to Dr. Hines of eight out of ten back pain. (Tr. 432). This evidence relies on a diagnosis to support subjective complaints of pain; however, social security law does not recognize a diagnosis, in itself, as a

28

commentary on the severity of a claimant's condition. *E.g. Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.").

I therefore suggest that the ALJ's finding that Dr. Hines' opinions were not supported by other medical evidence of record is supported by substantial evidence. This conclusion is buttressed by the ALJ's finding that Plaintiff was less than credible. Since Dr. Hines' opinions rested largely on these less than credible complaints, Dr. Hines' opinion was appropriately discounted by the ALJ.

### H.   Conclusion

For the reasons stated above, the Court **RECOMMENDS** that McMillan's Motion for Summary Judgment (Doc. 15) be **DENIED**, and the Commissioner's Motion (Doc. 18) be **GRANTED.**

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are

29

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 12, 2017                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 12, 2017                               By s/Kristen Castaneda
                                                  Case Manager